IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 1:20-cv-02240-RBJ

BUSHRA ABDUL KHALEK, individually and as power of attorney for Mohammed Abdul
Khalek,

      Plaintiff,

v.

SOUTH DENVER REHABILITATION, LLC d/b/a Orchard Park Health Care Center, and
THOMAS SYLVAIN,

      Defendants.

---

### ORDER ON MOTION TO REMAND AND MOTION TO DISMISS

---

This case involves claims for negligence and breach of fiduciary duty based on alleged
misconduct by defendants that resulted in Mohammed Abdul Khalek's dying from COVID-19.
Before the Court are plaintiff's motion to remand to state court, ECF No. 29, and defendants'
motion to dismiss, ECF No. 27. For the reasons discussed below, plaintiff's motion to remand to
state court is GRANTED, and defendants' motion to dismiss is MOOT.

### I. FACTUAL BACKGROUND

The following facts are alleged in plaintiff's amended complaint,[1] and the Court assumes
them to be true for the purpose of the pending motions. Plaintiff Bushra Abdul Khalek is the

---

[1] Plaintiff moved to amend the complaint, ECF No. 41-1, on March 26, 2021, after both pending motions were fully
briefed. The Court permitted the amendment and indicated that it would consider the motions in the context of the
amended complaint. ECF No. 43.

surviving spouse and heir at law of Mohammed Abdul Khalek ("Mr. Khalek").  ECF No. 41-1 at

¶¶1–2.  Defendant South Denver Rehabilitation LLC, which does business under the name

Orchard Park Health Care Center ("Orchard Park"), is a licensed nursing home and rehabilitation

center in Littleton, Colorado.  Defendant Thomas Sylvain was the Executive Director and/or

Administrator for Orchard Park at all relevant times.  *Id.* at ¶¶3–4.

      Mr. Khalek was a resident at Orchard Park due to a Parkinson's diagnosis.  Plaintiff

alleges that Orchard Park did not provide adequate rehabilitation services there, and as a result

his stay at Orchard Park was significantly longer than he or his family had planned.  *Id.* at ¶¶6–8.

The COVID-19 pandemic hit while Mr. Khalek was at Orchard Park.  The facility went into

lockdown in mid-March 2020, and plaintiff and Mr. Khalek's family were unable to visit him or

to check on his care.  They requested that he be discharged, but defendants told them he would

not be discharged until April 20, 2020.  In late March 2020 Mr. Khalek was moved from his

private room to a different nursing unit without the family's consent.  *Id.* at ¶¶10–14.

      Plaintiff and the family frequently called defendants to ask about the number of COVID-

19 cases and to determine if they needed to bring Mr. Khalek home for his safety.  Defendants

repeatedly told plaintiff that there were no COVID-19 cases, and that the family need not worry.

Then, on April 11, 2020 a social worker at Orchard Park told plaintiff that there was one

confirmed case of COVID-19 in the facility.  Plaintiff and her family decided to remove Mr.

Khalek from Orchard Park that day, despite defendants' saying the discharge would be against

medical advice and would result in penalties, and despite Orchard Park's not having prepared for

his discharge in any way.  *Id.* at ¶¶16–22.

      Shortly after returning home, Mr. Khalek showed signs of COVID-19 and tested positive.

Plaintiff transferred him to a hospital where he underwent treatment for the disease, including a prolonged stay in the ICU on a ventilator.  He ultimately died of COVID-19 on August 9, 2020.  *Id.* at ¶¶23–28; ECF No. 36-1.  Plaintiff subsequently learned that Orchard Park had between thirty and forty confirmed COVID-19 cases involving residents, twenty cases involving staff, and two deaths from COVID-19 while Mr. Khalek was at Orchard Park.  ECF No. 41-1 at ¶30.

Plaintiff alleges that defendants repeatedly and intentionally lied to plaintiff and the family about the COVID-19 outbreak in order to avoid liability and to retain Mr. Khalek as a paying client.  Further, Mr. Khalek's chart lacks any nursing assessment notes from March 10 through April 11, suggesting that he received inadequate or no assessments or care during that period.  *Id.* at ¶¶32–35.  Plaintiff alleges that as a result of defendants' conduct, Mr. Khalek was infected with and died from COVID.  *Id.* at ¶36.

Plaintiff brings two claims for relief: (1) negligence resulting in wrongful death, and (2) breach of fiduciary duty.  Among the allegations supporting these claims are defendants' failing to monitor Mr. Khalek; failing to plan his care or coordinate his discharge; failing to provide adequate and trained staff; failing to document his care; providing inaccurate information regarding Mr. Khalek's status and care; and intentionally deceiving plaintiff regarding the COVID-19 outbreak, Mr. Khalek's medical status and infection status, and defendants' ability to keep him safe during the outbreak.  *Id.* at ¶¶41, 47.

## II. PROCEDURAL BACKGROUND

Plaintiff filed suit in state district court in Arapahoe County on June 30, 2020.  ECF No. 1-2 at 1.  Defendants removed the action to federal court on July 29, 2020.  ECF No. 1.  They then filed a motion to dismiss on September 1, 2020.  ECF No. 27.  Both the removal and the

motion to dismiss were based on applicability of the Public Readiness and Emergency

Preparedness ("PREP") Act.  On September 22, 2020 plaintiff moved to remand the case to state

court, arguing that removal was improper.  ECF No. 29.  Both motions are fully briefed and ripe

for the Court's review.  ECF Nos. 28, 30, and 33.  The parties have also filed various

supplemental authorities for the Court's consideration.  ECF Nos. 34, 35, 38, 39, and 40.

### III. STANDARD OF REVIEW

The primary question before the Court is whether defendants' removal of this case to

federal court was proper.  A defendant may remove "any civil action brought in a State court of

which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).

District courts have "original jurisdiction of all civil actions arising under the Constitution, laws,

or treaties of the United States."  28 U.S.C. § 1331.  A party's right to remove a civil action is

"determined according to the plaintiff's pleading at the time of the petition for the removal."

*Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939).  Under the "well-pleaded complaint" rule,

"federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's

properly pleaded complaint."  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  Thus, a

plaintiff, as the "master of the claim," can avoid federal jurisdiction by relying solely on state

law.  *Id.* at 392.

A removed action must be remanded "[i]f at any time before final judgment it appears

that the district court lacks subject matter jurisdiction."  28 U.S.C. § 1447(c).  "[S]tatutes

conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be

narrowly construed in light of our constitutional role as limited tribunals."  *Pritchett v. Office*

*Depot, Inc.*, 420 F.3d 1090, 1094–95 (10th Cir. 2005) (citations omitted).  The removing party

bears the burden of establishing federal jurisdiction. *Martin v. Franklin Cap. Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001), *abrogated on other grounds by Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014).

## IV. ANALYSIS

Defendants advance the same three arguments for federal jurisdiction pursuant to the PREP Act that have been made by dozens of other defendants during the COVID-19 pandemic: (1) that the PREP Act completely preempts all state law claims; (2) that the PREP Act creates a substantial federal question embedded in plaintiff's claims; and (3) that jurisdiction is conferred by the federal officer removal statute. *See* ECF No. 33.  I reject these arguments for the same reasons that nearly all other courts across the country have rejected them.  I thus find that this Court lacks jurisdiction to hear plaintiff's claims, and I remand this case to state court.

### A.  __The PREP Act__

Congress passed the PREP Act in 2005.  This statute authorizes the federal Secretary of Health and Human Services ("HHS") to issue a declaration that "a disease or other health condition or other threat to health constitutes a public health emergency."  42 U.S.C. § 247d-6d(b).  If applicable, the PREP Act provides immunity to "covered persons" from liability under federal and state law for "all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration under subsection (b) has been issued with respect to such countermeasure." *Id.* § 247d-6d(a)(1).  The PREP ACT requires a causal relationship between the injury or loss and the countermeasure. *Id.* § 247d-6d(a)(2)(B).  If immunity applies, the injured person may seek compensation from the Countermeasures Injury Compensation Program ("CICP"), a federal

regulatory program that covers some losses associated with the use of covered countermeasures. *Id.* § 247d-6e.

The PREP Act provides one exception to immunity—when serious injury or death occurs through willful misconduct.  In that situation the injured person or their survivors must file suit in the U.S. District Court for the District of Columbia and prove their injury by clear and convincing evidence.  *Id.* § 247d-6d(c)(3),(e)(1).  Furthermore, the PREP Act includes an express preemption clause that reads, "no State or political subdivision of a State may establish, enforce, or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that . . . is different from, or is in conflict with, any requirement applicable under this section."  *Id.* § 247d-6d(b)(8).

In March 2020 the Secretary of HHS declared that COVID-19 was a public health emergency.  Additionally, the Secretary declared that the PREP Act's protections would apply to covered persons using or administering covered countermeasures to combat the pandemic.  85 Fed. Reg. 15198.  The Secretary has since amended the declaration multiple times.  On December 9, 2020 the Secretary issued a Fourth Amendment to the declaration that further defined covered countermeasures to include any antiviral, drug, vaccine, biologic product, diagnostic, respiratory protective device, or any other device, product, or technology used to mitigate, prevent, treat, or limit transmission or harm from COVID-19.  85 Fed. Reg. 79196.  These include things like N95 masks and ventilators.  42 U.S.C. § 247d-6d(i)(1)(D).

The Fourth Amendment also stated that the declaration must be construed in accordance with the advisory opinions on the PREP Act issued by HHS's Office of the General Counsel ("OGC"), and that it "expressly incorporates the Advisory Opinions for that purpose."  *Id.* at

79192.  In addition, it responded to questions and lawsuits regarding the failure to administer covered countermeasures.  It made explicit that "there can be situations where not administering a covered countermeasure to a particular individual can fall within the PREP Act and this Declaration's liability protections."  *Id.* at 79194.

Finally, the Fourth Amendment invoked the *Grable* doctrine to indicate that the PREP Act involved important federal questions. The relevant regulation text reads

> [T]here are substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mf'g.*, 545 U.S. 308 (2005), in having the uniform interpretation of the PREP Act.  Under the PREP Act, the sole exception to the immunity from suit and liability of covered persons under the PREP Act is an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct by such covered person.  In all other cases, the exclusive remedy is an administrative remedy under 319F-4 of the PHS Act.

*Id.* at 79197–98.

On January 8, 2021 the OGC issued Advisory Opinion 21-01.  In it the OGC claimed that the PREP Act is a "complete preemption" statute based on the broad language of the statute providing immunity for anything "relating to" the administration of a covered countermeasure.  Dep't of Health & Human Servs., Advisory Opinion 21-01 on the Public Readiness and Emergency Preparedness Act, Scope of Preemption Provision, 2–3 (8 January 2021) [hereinafter "Adv. Op. 21-01"].  The opinion also stated that the *Grable* doctrine provided a separate basis for federal jurisdiction because any case in which the PREP Act is implicated involves a substantial federal question such that it belongs in federal court.  *Id.* at 4–5.  According to OGC, "[o]nce invoked, the court retains the case to decide whether the immunity and preemption provisions apply; if they do not apply, then the court would try the case as it would a diversity case."  *Id.* at 5.  But if the court finds that the PREP Act applies, "it would dismiss the case or if

7

death or serious physical injury proximately caused by willful misconduct is alleged, transfer it to the District Court for the District of Columbia." *Id.*

### B. Complete preemption

Defendants' first argument is that the PREP Act completely preempts all state law claims, including the negligence and breach of fiduciary duty claims at issue here. ECF No. 33 at 5. As discussed above, federal question jurisdiction typically only exists when a plaintiff pleads a federal issue on the face of her complaint. However, the doctrine of "complete preemption" is an exception to this well-pleaded complaint rule. *Devon Energy Prod. Co. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1204 (10th Cir. 2012). "Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64 (1987). Complete preemption is rare. *Devon Energy*, 693 F.3d at 1204. The Supreme Court has found complete preemption applicable to only three federal statutes: § 301 of the Labor Management Relations Act, § 502(a) of the Employee Retirement Income Security Act of 1974, and actions for usury against national banks under the National Bank Act. *Id.* at 1204–05.

It is important to note the distinction between ordinary and complete preemption. "[O]rdinary preemption may be invoked in both state and federal court as an affirmative defense to the allegations in a plaintiff's complaint. Such a defense asserts that the state claims have been substantively displaced by federal law." *Devon Energy*, 693 F.3d at 1203 n.4 (quoting *Geddes v. Am. Airlines, Inc.*, 321 F.3d 1349, 1352 (11th Cir. 2003)). However, ordinary preemption "does not render a state-law claim removable to federal court," unlike complete preemption. *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1221 (10th Cir. 2011).

The Tenth Circuit in *Devon Energy* noted that assessing a claim of complete preemption requires a two-part analysis: (1) "whether the federal regulation at issue preempts the state law relied on by the plaintiff;" and (2) "whether Congress intended to allow removal in such a case, as manifested by the provision of a federal cause of action to enforce the federal regulation." *Devon Energy*, 693 F.3d at 1205 (internal quotation marks and alterations omitted) (citing *Schmeling v. NORDAM*, 97 F.3d 1336, 1340 (10th Cir. 1996)).  It has cautioned that "courts should begin their inquiry with the second prong."  *Id.* at 1206.

Here the second prong makes clear that the PREP Act does not completely preempt state causes of action.  Though Congress did provide a federal cause of action to enforce the PREP Act, it is narrow and applies only to "willful misconduct" by covered persons using covered countermeasures.  42 U.S.C. § 247d-6d(d)(1).  Indeed, the primary method for resolving claims under the PREP Act is a regulatory program, the CICP, not a federal cause of action.  *Id.* § 247d-6e.  Exclusive jurisdiction for negligence and recklessness claims, likely the vast majority of PREP Act claims, thus rests with the CICP—not with federal courts.  As another court addressing this exact issue explained, "[t]he PREP Act does not provide the exclusive cause of action for claims that fall within its scope; in fact, for the most part, the Act provides no causes of action whatsoever.  The PREP Act is, at its core, an immunity statute; it creates no rights, duties, or obligations."  *Schuster v. Percheron Healthcare, Inc.*, 493 F. Supp. 3d 533, 537 (N.D. Tex. 2021) (holding that the PREP Act did not completely preempt state law claims).

This conclusion is further bolstered by the text of the PREP Act's preemption provision. It states that no state or other political subdivision may create or enforce a law that "is different from, or is in conflict with" the PREP Act.  42 U.S.C. § 247d-6d(b)(8).  This language indicates

9

not that any and all state claims related to COVID-19 are preempted, but only those that conflict

with or differ from the PREP Act are preempted.  The Act itself thus provides only for conflict

preemption.  It does not confer Article III court jurisdiction over plaintiff's claims.  Though no

Court of Appeals has yet to address this question, I have reviewed over sixty district court

decisions analyzing it.  The overwhelming majority—all but two—found no complete

preemption by the PREP Act.  *E.g.*, *Est. of Maglioli v. Andover Subacute Rehab. Ctr. I*, 478 F.

Supp. 3d 518, 528 (D.N.J. 2020) (finding that 42 U.S.C. § 247d-6d(b)(8)] pertains to "conflict

preemption" but does not mandate a federal forum or completely preempt all state law claims);

*Martin v. Serrano Post Acute LLC*, No. CV 20-5937 DSF (SKX), 2020 WL 5422949, at *2 (C.D.

Cal. Sept. 10, 2020) ("[M]ere immunity against state law or preemption of state law is not the

equivalent of complete preemption and does not provide removal jurisdiction.").

      Defendants urge me to defer to the OGC's Advisory Opinion 21-01, which says that

complete preemption applies.  Adv. Op. 21-01 at 2–4.  But that opinion "is not a final agency

action or a final order," nor does it have "the force or effect of law."  *Id.* at 5.  It is thus not owed

*Chevron* deference.  I join other district courts in noting that "[t]he Advisory Opinion cites no

cases for its proposition that an exclusive federal administrative remedy is sufficient for

complete preemption."  *Dupervil v. All. Health Operations, LCC*, No. 20CV4042PKCPK, 2021

WL 355137, at *10 (E.D.N.Y. Feb. 2, 2021); *see also Schuster*, 493 F. Supp. 3d at 538 ("[T]he

plethora of cases rejecting the Advisory Opinion's position . . . possess a much larger 'power to

persuade' than the Advisory Opinion."); *Smith v. Colonial Care Ctr., Inc.*, No. 2:21-CV-00494-

RGK-PD, 2021 WL 1087284, at *6 (C.D. Cal. Mar. 19, 2021) (refusing to defer to Adv. Op. 21-

01).  It therefore also lacks the "power to persuade."  *Skidmore v. Swift & Co.*, 323 U.S. 134, 140

(1944).

For the same reason, I decline to follow the one case defendants cite that supports complete preemption in the COVID-19 context, *Garcia v. Welltower OpCo Grp. LLC*, No. SACV2002250JVSKESX, 2021 WL 492581 (C.D. Cal. Feb. 10, 2021). *Garcia* deferred to Advisory Opinion 21-01 without citing any other legal authorities for its conclusion. *Id.* at *6–7. It is thus equally unpersuasive, and multiple decisions issued since *Garcia* have come to this same conclusion. *E.g.*, *Est. of Jones through Brown v. St. Jude Operating Co.*, LLC, No. 3:20-CV-1088-SB, 2021 WL 886217, at *8 (D. Or. Mar. 8, 2021) (finding that "*Garcia* is not persuasive authority, and is an outlier in light of the weight of authority holding that complete preemption does not apply here."); *Schuster*, 493 F. Supp. 3d at 537 (same). I have found just one other case concluding that the PREP Act completely preempts all state law claims. *See Rachal v. Natchitoches Nursing & Rehab. Ctr. Llc*, 2021 U.S. Dist. LEXIS 105847 (W.D. La. Apr. 30, 2021). It concluded that OGC's interpretation of the PREP Act and its scope were reasonable based on a variety of factors. *Id.* at *12–13. Its analysis was thin and conclusory, however, and I choose to follow the overwhelmingly majority of sister districts in reaching the opposite conclusion. Similarly, defendants' reliance on *Parker*, an earlier PREP Act case about swine flu, is inapposite. Though the court there held that the PREP Act preempted all state law tort claims arising from the administration of covered countermeasures, it did so recognizing that Congress meant to provide immunity for "errors in administering a vaccination program." *Parker v. St. Lawrence Cty. Pub. Health Dep't*, 102 A.D.3d 140, 143–44 (N.Y. App. Div. 2012). It addressed conflict preemption, not the complete preemption at issue here. *See also Est. of McCalebb v. AG Lynwood, LLC*, No. 2:20-CV-09746-SB-PVC, 2021 WL 911951, at *6 (C.D.

Cal. Mar. 1, 2021) (declining to follow *Parker* because it had "no occasion to consider federal question jurisdiction . . . .").

Even if the PREP Act provided for complete preemption, however, defendants would still fail to meet their burden under the first *Devon Energy* prong. Plaintiff's allegations do not fall within the Act's scope. Plaintiff does not allege that she was injured (i.e., that her late husband got COVID-19 and died) because of defendants' use or administration of covered countermeasures such as masks, ventilators, or vaccines. Instead, she alleges that her injury resulted from defendants' negligence in rehabilitating Mr. Khalek, which extended his stay and thus exposed him to COVID-19; their intentional lying about the scope of the COVID-19 outbreak; their failure to plan or coordinate his discharge; and their general failure to take proper measures to prevent the spread of the disease among residents.

Only the last of these sets of allegations could possibly relate to covered countermeasures But other district courts have consistently found that failures to take countermeasures, much less actions not directly linked to countermeasures at all (such as general nursing home care), fall outside the ambit of the PREP Act. *E.g.*, *Lyons v. Cucumber Holdings, LLC*, No. CV2010571JFWJPRX, 2021 WL 364640, at *4 (C.D. Cal. Feb. 3, 2021) (noting immunity for inaction claims arose only when failure to administer a countermeasure to one person was closely linked to administration of that countermeasure to another); *Maglioli*, 478 F. Supp. 3d at 531 (reasoning that the PREP Act would not preempt a malpractice claim because it is "designed to protect those who employ countermeasures, not those who decline to employ them."); *Dupervil*, 2021 WL 355137, at *13 (noting that "Plaintiff's actual claims facially rest on an alleged duty arising from or related to proper standards of general medical and nursing care, not

12

the . . .  countermeasures covered under the PREP Act.").

Defendants' argument is even weaker than those put forth in other cases.  Plaintiff's allegations center on affirmative deceit about the scope and management of the COVID-19 outbreak, not just general malpractice or non-use of countermeasures.  Furthermore, defendants repeatedly emphasize that Mr. Khalek's injury derived from a ventilator, but one used by *a different hospital after Mr. Khalek left Orchard Park*.  ECF No. 30 at 4–5.  This does not meet the "causal link" requirement of the statute's plain text, and it is not how the Act was meant to operate.  Another court in this Circuit rejected a similar argument.  It wrote, "the Court is not convinced that a facility using covered countermeasures somewhere in the facility is sufficient to invoke the PREP Act as to all claims that arise in that facility.  The PREP Act still requires a causal connection between the injury and the use or administration of covered countermeasures, and that link is not present under Defendants' interpretation."  *Eaton v. Big Blue Healthcare, Inc.*, 480 F. Supp. 3d 1184, 1194 (D. Kan. 2020).  Defendants' assertion here—that the PREP Act provides immunity to one facility that provided inadequate care to a patient because another facility happened to use a covered countermeasure on that same patient—is even further afield.  The Court thus holds that the PREP Act does not completely preempt state law claims, and that even if it did, plaintiff's claims would not fall within its scope.

## C.  Embedded federal question jurisdiction

Defendants' second argument is that plaintiff's claims have embedded in them a substantial federal question through their implication of the PREP Act.  Defendants thus contend that even if there is no complete preemption under the Act, removal is still proper under the *Grable* doctrine.  Under *Grable*, a complaint based solely on state law claims can invoke federal

question jurisdiction only if (1) the case necessarily raises a federal issue; (2) the federal issue is both substantial and actually in dispute; and (3) exercise of federal jurisdiction would be "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Grable*, 545 U.S. at 313–14 (internal citations omitted). But "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 813 (1986).

There is no federal question jurisdiction under *Grable* because defendants cannot meet the first element of the test. Defendants here have not carried their burden in demonstrating that plaintiff's claims require interpretation of any federal statute, including the PREP Act. Plaintiff brings solely state law claims for negligence and breach of fiduciary duty. The fact that her case relates to the COVID-19 pandemic does not render the PREP Act's provisions essential to the resolution of her claim. The PREP Act is purely a federal defense available to defendants. If defendants did not raise that defense, a court would have no reason to look to the Act to adjudicate plaintiff's case. Looking only to state law would be both sufficient and appropriate. Thus, the case before this Court does not "necessarily" raise a federal issue.

Defendants argue that plaintiff has implicated federal issues in her case because the claim for injury is based on a ventilator and on defendants' failure to follow COVID-19 precautions and protocols. ECF No. 33 at 2. Because these are covered countermeasures, and plaintiff's claims for damages relate solely to those countermeasures, the argument goes, the case requires application of the PREP Act. *Id.* I disagree. Defendants rewrite plaintiff's complaint in an attempt to fit it under the PREP Act. The Court will not permit such rewriting. *See Eaton*, 480

14

F. Supp. 3d at 1193 (rejecting defendants' efforts to "re-write Plaintiff's allegations using the language of the PREP Act—language never actually used in Plaintiff's complaint."); *Lopez v. Life Care Centers of Am., Inc.*, No. CV 20-0958 JCH/LF, 2021 WL 1121034, at *13 (D.N.M. Mar. 24, 2021) ("This Court must generally consider the allegations as Plaintiffs asserted them in the complaints, not what Defendants wish them to be.").  Plaintiff is the "master of the claim," *Caterpillar*, 482 U.S. at 392, not defendants, and plaintiff has not pled any claims that require analysis under the PREP Act.

Just as district courts across the country agree that the Act does not provide for complete preemption, so too have they agreed that it does not confer federal jurisdiction under *Grable*. *E.g.*, *Bolton v. Gallatin Ctr. for Rehab. & Healing, LLC*, No. 3:20-CV-00683, 2021 WL 1561306, at *4 (M.D. Tenn. Apr. 21, 2021) ("[N]o embedded federal issue exists because the Court could ignore entirely the PREP Act in determining whether Bolton established prima facie state-law claims for gross negligence and recklessness."); *McCalebb*, 2021 WL 911951, at *3 (finding no federal jurisdiction under *Grable* because "Plaintiffs' state claims do not require an interpretation, or challenge the constitutional validity, of a federal statute."); *Dupervil*, 2021 WL 355137, at *14 (same).

Defendants point to the HHS Secretary's Fourth Amendment and to OGC's Advisory Opinion 21-01 for support that the PREP Act creates federal question jurisdiction under *Grable*. ECF Nos. 35, 38.  As already discussed, however, these documents are not well supported and are against the weight of authority.  "Neither the Secretary nor the OGC provides any significant analysis of *Grable*'s narrow holding and its two-pronged test.  Deference to the Secretary's jurisdictional assertion is not due, and adherence to his conclusory assertion is not warranted."

*McCaleb*, 2021 WL 911951, at *3; *accord Jones*, 2021 WL 886217, at *8. This Court will not defer to the Secretary or OGC's bald conclusion regarding the *Grable* doctrine. I thus conclude that there is no embedded federal question in plaintiff's claims. Removal on this ground is improper.

### D. **Federal officer removal statute**

Defendants' final argument is that removal is proper under the federal officer removal statute, 28 U.S.C. § 1442. To establish a proper basis for removal under § 1442, the removing party must "raise a colorable federal defense" and "establish that the suit is for an act under color of office," which requires showing a "causal connection between the charged conduct and asserted official authority." *Jefferson Cty., Ala. v. Acker*, 527 U.S. 423, 431 (1999) (internal quotation marks, alterations, and citations omitted). This right of removal extends to private individuals or entities "acting under" a federal officer. 28 U.S.C. § 1442(a)(1).

I assume solely for purposes of this analysis that defendants have raised the PREP Act as a "colorable federal defense," and that there is a causal connection between at least some of plaintiff's allegations and that defense (though as discussed above, I do not believe the Act applies to the facts of this case). Because defendants fail to show they are "acting under" a federal officer, however, I ultimately find that removal is improper under 28 U.S.C. § 1442.

Defendants argue that they are "acting under" a federal officer because they acted pursuant to guidelines and mandates issued by HHS, a federal agency. ECF No. 33 at 14. But the Supreme Court's decision in *Watson* foreclosed exactly this argument. The Court wrote that "simply complying with the law" was not enough. *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 152 (2007). It explained

A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase "acting under" a federal "official." And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored. A contrary determination would expand the scope of the statute considerably, potentially bringing within its scope state-court actions filed against private firms in many highly regulated industries.

*Id.* at 153. Plaintiff's case is exactly the type *Watson* warned could be erroneously brought within § 1442's ambit—a state court action in the highly regulated nursing home industry, where a private entity argues only that it has complied with the law. The federal officer removal statute does not apply here. I have reviewed dozens of decisions coming to this same conclusion as to state law claims against nursing homes during the COVID-19 pandemic. *E.g.*, *Lyons*, 2021 WL 364640, at *3; *Dupervil*, 2021 WL 355137, at *15–16; *Maglioli*, 478 F. Supp. 3d at 535; *Martin*, 2020 WL 5422949, at *1. I thus conclude that removal under 28 U.S.C. § 1442 is improper.

## ORDER

1. The Court GRANTS plaintiff's motion to remand [ECF No. 29]. This case is remanded to the state District Court of Arapahoe County for all further proceedings.

2. Because this Court lacks subject matter jurisdiction and is remanding the case, defendants' motion to dismiss [ECF No. 27] is MOOT.

DATED this 11th day of June, 2021.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge